Slip Op. 02 - 6

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - -x
TAK FAT TRADING COMPANY,
                                      :
                    Plaintiff,
                                      :
          v.
                                      :
THE UNITED STATES,                      Court No. 99-03-00143
                                      :
                    Defendant,
                                      :
          -and-
                                      :
THE COALITION FOR FAIR PRESERVED
MUSHROOM TRADE,                       :

          Intervenor-Defendant.  :

- - - - - - - - - - - - - - - - - - -x

                    Opinion


[Plaintiff's motion for judgment upon
 agency record denied; action dismissed.]

                              Decided: January 18, 2002


     Grunfeld, Desiderio, Lebowitz & Silverman LLP (Bruce M.
Mitchell, Max F. Schutzman, Jeffrey S. Grimson and Mark E. Pardo)
for the plaintiff.

     Robert D. McCallum, Jr., Assistant Attorney General; David M.
Cohen, Director, and Velta A. Melnbrencis, Assistant Director,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice; and Office of Chief Counsel for Import Administration,
U.S. Department of Commerce (Myles S. Getlan), of counsel, for the
defendant.

     Collier Shannon Scott, PLLC (Michael J. Coursey and Adam H.
Gordon) for the intervenor-defendant.


          AQUILINO, Judge:  Congress has provided in 19 U.S.C.

§1330(a) that the United States International Trade Commission

("ITC") be composed of six members and in 19 U.S.C. §1677(11) that,

if the

> Commissioners voting on a determination . . . are evenly
> divided as to whether the determination should be af-
> firmative or negative, the Commission shall be deemed to
> have made an affirmative determination.

In Certain Preserved Mushrooms From China, India, and Indonesia, 64 Fed.Reg. 9,178 (Feb. 24, 1999), it is reported that the ITC "determines" that an industry in the United States is materially injured by reason of such imports from those named nations and also that three of the commissioners voting "find that critical circumstances exist with respect to subject-imports from China" and that the other three "do not" so find. See generally Certain Preserved Mushrooms From China, India, and Indonesia, USITC Pub. 3159 (Feb. 1999). Whereupon issue has been joined in this action as to whether or not the **find**ing in the affirmative is equivalent to a **determination** for the purpose of enforcing the foregoing tie-vote provision of 19 U.S.C. §1677(11).

I

The evenly-divided voting among the commissioners was precipitated by the Notice of Final Determination of Sales at Less Than Fair Value: Certain Preserved Mushrooms from the People's Republic of China, 63 Fed.Reg. 72,255, 72,259 (Dec. 31, 1998), wherein the International Trade Administration, U.S. Department of Commerce ("ITA") established a dumping margin of 178.59 percent[1]

---

[1] 63 Fed.Reg. at 72,268. This margin was reduced somewhat (to 162.47%) in Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms from the People's Republic of China, 64 Fed.Reg. 8,308, 8,310 (Feb. 19, 1999).

for Tak Fat Trading Co. and also "determined that critical cir-

cumstances exist".[2]  Given this conclusion, the ITC's affirmative

final determination of material injury had to also

---

[2] The Trade Agreements Act of 1979, as amended, provides that, in general, if critical circumstances are timely alleged by a petitioner, the ITA shall promptly determine whether there is a reasonable basis to believe or suspect that

> **(A)(i)** there is a history of dumping and material injury by reason of dumped imports in the United States or elsewhere of the subject merchandise, or
>
> **(ii)** the person by whom, or for whose account, the merchandise was imported knew or should have known that the exporter was selling the subject merchandise at less than its fair value and that there was likely to be material injury by reason of such sales, and
>
> **(B)** there have been massive imports of the subject merchandise over a relatively short period.
>
> *   *   *
>
> If the determination of the [ITA] . . . is af-firmative, then any suspension of liquidation ordered . . .  shall apply, or, if notice of such suspension of liquidation is already published, be amended to apply, to unliquidated entries of merchandise entered, or withdrawn from warehouse, for consumption on or after the later of--
>
> **(A)** the date which is 90 days before the date on which the suspension of liquidation was first ordered, or
>
> **(B)** the date on which notice of the deter-mination to initiate the investigation is published in the Federal Register.

19 U.S.C. §1673b(e).  See generally 19 C.F.R. §351.206.  The prescribed statutory effect of a final ITA affirmative decision regarding critical circumstances is set forth in 19 U.S.C. §1673-d(c)(4).

include a finding as to whether imports subject to the
affirmative [critical circumstances] determination . . .
are likely to undermine seriously the remedial effect of
the antidumping duty order to be issued . . ..

19 U.S.C. §1673d(b)(4)(A)(i).

Finally, the ITA opined herein that the foregoing ITC
tie-vote provision "applies to critical circumstances determi-
nations."

We note that critical circumstances decisions are
referred to as both "determinations" and "findings" in
the statute. Moreover, while the legislative history
will sometimes refer to the Commission's critical cir-
cumstances "findings" (*see*, *e.g.*, H.R. Rep. No. 96-317,
at 69 (1979)), these decisions are more often identified
as "determinations." *See*, *e.g.*, S.Rep. No. 96-249 at 74
(1979); H.R. Rep. No. 103-826, at 50 (1994). Since the
terms "findings" and "determinations" are used inter-
changeably in the statute and legislative history, the
use of one or the other does not preclude the application
of section [1677](11) to the Commission's consideration
of the critical circumstances issue.

Congress promulgated the critical circumstances
provision in order "to provide prompt relief to domestic
industries suffering from large volumes of, or a surge
over a short period of, imports and to deter exporters
whose merchandise is subject to an investigation from
circumventing the intent of the law by increasing their
exports to the United States during the period between
initiation of an investigation and a preliminary determi-
nation by the [ITA]." H.R. Rep. 96-317, at 63 (1979).
In amending the critical circumstances provisions in
1988, Congress developed "an improved critical circum-
stances procedure [that] will significantly strengthen
antidumping and countervailing duty procedures by re-
vitalizing a provision that has up to now been ineffect-
ive." H.R. Rep. No. 100-576, at 611 (1988). Considering
this legislative history, we conclude that Congress did
not intend to limit the availability of retroactive
relief in cases such as this one to only those instances
where two-thirds of the Commission votes to grant such
relief. Therefore, we consider the Commission to have
made an affirmative critical circumstances determination.
. . . [3]

---

[3] See supra note 1, 64 Fed.Reg. at 8,309.

This opinion is the focus of plaintiff's complaint, which avers that the affirmative finding of critical circumstances by the three Commission members was not a determination covered by section 1677(11) and therefore that the ITA instruction to the Customs Service to assess antidumping duties on entries during the period May 7 through August 4, 1998 is contrary to law.

Jurisdiction is properly pleaded pursuant to subsections (a)(2)(A)(i)(II) and (a)(2)(B)(i) of 19 U.S.C. §1516a and to 28 U.S.C. §1581(c).

II

Courts have been and continue to be the final arbiter of disputes over what the law is. E.g., Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803); J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc., 122 S.Ct. 593, 598 (2001). And they have reaffirmed the "almost universally accepted common-law rule" that, in the absence of contrary, duly-adopted authority, it takes "a majority of a quorum constituted of a simple majority of a collective body . . . to act for the body." FTC v. Flotill Products, Inc., 389 U.S. 179, 183 (1967). Cf. Voss Int'l Corp. v. United States, 628 F.2d 1328, 1332 (CCPA 1980)("a majority of a quorum is sufficient to make a valid determination for the [International Trade] Commission").

Except, as recited above, Congress has legislated that less than a majority of commissioners can render an enforceable determination in the name of their agency. And now, counsel for

the defendant and for the intervenor-defendant essentially repeat the opinion of the ITA quoted above[4], with the latter also arguing that the agency's decision to accept the evenly-divided ITC vote on critical circumstances as affirmative herein was in accord with prior practice on its part.  See Response Brief of Defendant Intervenor, pp. 19-20, citing Notice of Antidumping Order: Coumarin from the People's Republic of China, 60 Fed.Reg. 7,751 (Feb. 9, 1995).

A

Interpretation begins with the language as enacted in the statute itself.  E.g., Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999).  Plaintiff's position, fundamentally, is that the precise usage of the words at issue in 19 U.S.C. §1673d(b)(4)(A)(i) *viz.* " . . . the final determination of the Commission shall include a finding as to whether . . ." and again in subsection (B) thereof (". . . the final determination of the Commission . . . shall also include a finding as to whether . . .") shows that the first does not signify the second nor are they equivalent in the complex context created by Congress.  Indeed, an ITC final determination of material injury entails more than the **Certain additional findings** mandated by subsection 1673d(b)(4) when, and only when, a final determination of the ITA is affirmative and also contains an affirmative finding of critical circumstances spelled out in 19 U.S.C. §1673d(a)(3).

---

[4] See, e.g., Defendant's Memorandum, p. 13; Response Brief of Defendant Intervenor, p. 4.

In all its years of attempting to construe and apply the Trade Agreements Act of 1979, this court cannot recall offhand an interchangeable usage on its part of finding as opposed to determination. Perhaps, this has been due to ingrained connection of the former to discrete facts. The most recent version of Black's Law Dictionary, at page 646 (7th ed. 1999), for example, does not define finding, only "finding of fact". While that lexicon's predecessor, the sixth edition of 1990, does define finding, it does so (at page 632) in main part by referring to a

> decision upon a question of fact reached as a result of a judicial examination or investigation by a court, jury, referee, coroner, etc. A recital of the facts as found.

Webster's Third New International Dictionary (1981) defines the word in part (at page 852) as "the result of a judicial or quasi-judicial examination or inquiry esp. into matters of fact . . .". The word determination generally has broader meaning, such as "the settling and ending of a controversy esp. by judicial decision"[5] or "resolving of a question by argument or reasoning"[6] or "final decision by a court or administrative agency". Black's Law Dictionary, p. 460 (7th ed. 1999).

Be the best definitions of those two nouns as they may, it cannot be said that they are never heard synonymously in today's American vernacular, only that any such usage cannot be the most

---

[5] Webster's Third New International Dictionary, p. 616 (1981).

[6] Id.

rewarding.  Compare, e.g., Roget's II The New Thesaurus, pp. 264-65

(3rd ed. 1995), with id. at 393.  The plaintiff takes the position

that the "intent of Congress [was] to distinguish the ITC's criti-

cal circumstances 'finding' from the ITC's injury 'determination'"[7]

and argues that,

> since the intent of Congress is plain from the language
> of the statute, there is no need to resort to the legis-
> lative history for further guidance.

Plaintiff's Brief, p. 7 n. 5, citing United States v. Oregon, 366

U.S. 643, 648 (1961).  This contention is prefaced with a repre-

sentation that the

> legislative history does not address the issue of whether
> the critical circumstances decision was designated as a
> "finding" to distinguish it from the ITC's "determina-
> tions" . . ..

Id.  Indeed, neither word is defined, but both the language of the

statute, as enacted, and the reported considerations underlying its

adoption reflect at least some interchangeable usage of them in and

by Congress.  See, e.g., 19 U.S.C. §1673b(e)("CRITICAL CIRCUM-

STANCES DETERMINATIONS"); 19 U.S.C. §1673b(e)(1)(". . . the [ITA]

shall promptly . . . determine . . ."); 19 U.S.C. §1673b(e)(2)("If

the determination of the [ITA] under paragraph (1) is affirmative

. . ."); 19 U.S.C. §1673d(a)(3) ("CRITICAL CIRCUMSTANCES DETERMINA-

TIONS"); 19 U.S.C. §1673d(b)(4) ("CERTAIN ADDITIONAL FINDINGS"); 19

U.S.C. §1673d(c)(3) ("If the determination of the [ITA] or the

[ITC] under subsection (a)(3) or (b)(4)(A) of this section, re-

---

[7] Plaintiff's Brief, p. 8.

spectively, . . . "); H.R. Rep. No. 96-317, p. 69 (1979) ("If critical circumstances have been alleged during the investigation, the final determinations of both the [ITA] and the ITC must contain findings as to whether the elements of critical circumstances have in fact been shown"); S. Rep. No. 96-249, p. 66 (1979) ("only if the [ITA] and ITC make final affirmative findings as to the existence of critical circumstances . . ."); id. at 74 ("Section 735 would establish the time limits and the standards for final determinations, including final critical circumstances determinations, by the [ITA] and the ITC during an anti-dumping duty investigation"). See also H.R. Conf. Rep. No. 100-576, p. 611 (1988) ("If [ITA] finds critical circumstances, ITC would determine whether retroactive imposition of antidumping or countervailing duties appears necessary to prevent recurrence of material injury . . .").

B

The Court of Appeals for the Federal Circuit has long recognized that the Trade Agreements Act has established

> an intricate framework for the imposition of antidumping duties in appropriate circumstances. The number of factors involved, complicated by the difficulty in quantification of these factors and the foreign policy repercussions of a dumping determination, makes the enforcement of the antidumping law a difficult and supremely delicate endeavor.

Smith-Corona Group, Consumer Prod. Div., SCM Corp. v. United States, 713 F.2d 1568, 1571 (Fed.Cir. 1983). In addition, the court has repeatedly "recognized the ITA as the 'master' of anti-

dumping law, . . . worthy of considerable deference." <u>Daewoo Elecs. Co. v. United States</u>, 6 F.3d 1511, 1516 (Fed.Cir. 1993), quoting <u>Consumer Prod. Div., SCM Corp. v. Silver Reed America, Inc.</u>, 753 F.2d 1033, 1039 (Fed.Cir. 1985). <u>See</u>, <u>e.g.</u>, <u>Thai Pineapple Pub. Co. v. United States</u>, 187 F.3d 1362, 1365 (Fed.Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u>. <u>Dole Food Co. v. United States</u>, 120 S.Ct. 1830 (2000); <u>Micron Tech., Inc. v. United States</u>, 117 F.3d 1386, 1394 (Fed.Cir. 1997); <u>Zenith Elecs. Corp. v. United States</u>, 77 F.3d 426, 430 (Fed.Cir. 1996); <u>Torrington Co. v. United States</u>, 68 F.3d 1347, 1351 (Fed.Cir. 1995).

The plaintiff attempts to rebut the conclusion of the ITA, <u>supra</u>, that

> Congress did not intend to limit the availability of re-troactive relief in cases such as this one to only those instances where two-thirds of the Commission votes to grant relief[8]

by referring to "undisputed limitations"[9] on tie votes among the commissioners, citing the ITC's published declination with regard to such votes on expedition of so-called sunset reviews[10] and its report <u>sub</u> <u>nom</u>. <u>Broom Corn Brooms</u>, USITC Pub. 2984 (Aug. 1996), p. I-8 n. 2, that an evenly-divided vote over provisional relief under 19 U.S.C. §2251 <u>et</u> <u>seq</u>. amounted to a "negative determination". Of course, that latter matter was not within the ambit of subtitle IV of Chapter 4 of Title 19, U.S.C. (Countervailing and Antidumping

---

[8]  <u>See</u>, <u>supra</u> note 1, 64 Fed.Reg. at 8,309.

[9]  Plaintiff's Brief, p. 10.

[10]  <u>See</u> <u>Int'l Trade Comm'n Rules of Practice and Procedure</u>, 63 Fed.Reg. 30,599, 30,604 (June 5, 1998).

Duties), which the plaintiff itself claims is the only arena for any application of the tie-vote provision. Finally, the plaintiff refers to this court's opinion in Makita Corp. v. United States, 21 CIT 734, 974 F.Supp. 770 (1997), to the effect that

> the court concluded that the very "tie-vote" provision at issue here, 19 U.S.C. §1677(11), did not apply to resolve a tie vote of the ITC concerning the issue of like product. This is significant, for that case and this involve instances where the ITC split evenly over an interlocutory issue. Thus, Makita stands for the proposition that 19 U.S.C. §1677(11) does not apply to all ITC determinations, findings, decisions and conclusions, as defendant's and defendant intervenor's arguments, by extension, suggest.

Plaintiff's Reply Brief, p. 2 (emphasis omitted).

This court does not read the argument of the defendant to that extent, although the intervenor-defendant does note that the language of section 1677(11) "appears to cover all Commission determinations that require a vote." Response Brief of Defendant Intervenor, p. 12 n. 2 (emphasis in original). Suffice it to simply state here that it was held in Makita that neither the statute nor judicial precedent precluded affirmance of both, split definitions of the like product[11] and that that decision has stood for a number of years, as has the ITA approach to the evenly divided ITC vote on critical circumstances in Notice of Antidumping Order: Coumarin From the People's Republic of China, 60 Fed.Reg. 7,751 (Feb. 9, 1995). In fact, Commissioner Bragg in that matter *cum* Chairman in this one noted that,

---

[11] See 21 CIT at 747, 974 F.Supp at 782.

although she reached a negative critical circumstances determination . . ., she believes that the "tie vote rule" (19 U.S.C. 1677(11)) is applicable to critical cir-cumstances.

USCIT Pub. 3159, p. 38 n. 140 (Feb. 1999).  Or, to consider the matter from the opposite perspective:

> Given that (1) 19 U.S.C. §1673(c)(3) requires Commerce to terminate any retroactive suspension of li-quidation required under paragraph (4) or section 1673b (e)(2) only if the determination of Commerce or the Commission under section 1673d(a)(3) or section 1673d(b) (4)(A), respectively, is negative; and (2) neither Com-merce's nor the Commission's determination with respect to critical circumstances was negative, Commerce properly did not direct Customs to terminate suspension of li-quidation of preserved mushrooms from China entered, or withdrawn from warehouse, for consumption by Tak Fat and the non-responding exporters for the 90-day period prior to August 5, 199[8].

Defendant's  Memorandum, p. 19.

Whichever way, this court is unable to concur with the plaintiff that the conclusion of the ITA herein is clearly not in accordance with law.  That is, it was not an impermissible con-struction of the statute to opine that "the use of one [word] or the other does not preclude the application of section [1677](11) to the Commission's consideration of the critical circumstances issue."[12]

### III

In view of the foregoing, plaintiff's motion for judgment upon the agency record must be denied and this action dismissed. Judgment will enter accordingly.

Decided:  New York, New York
          January 18, 2002

_____
                                    Judge

_____

[12] See supra note 1, 64 Fed.Reg. at 8,309.