Slip Op. 03 - 134

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - - - x
TAK FAT TRADING CO., MEI WEI FOODS     :
INDUSTRY CO., LTD., LEUNG MI INTERNA-
TIONAL, TAK YUEN CORP. and GENEX INTER- :
NATIONAL CORP.,
                                        :

                    Plaintiffs,         :

          v.                            :

UNITED STATES,                             Court No. 00-07-00360
                                        :

                    Defendant,          :

          -and-                         :

COALITION FOR FAIR PRESERVED MUSHROOM
TRADE,                                  :

          Intervenor-Defendant.    :

- - - - - - - - - - - - - - - - - - - - - x

                    <u>Opinion</u>

[Plaintiffs' motion for judgment on the agency
 record, vacating antidumping-duty-order scope
 determination, granted.]

                              Decided: October 17, 2003

     <u>Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP</u> (<u>Max
F. Schutzman</u>, <u>Erik D. Smithweiss</u> and <u>Mark E. Pardo</u>) for the
plaintiffs.

     <u>Peter D. Keisler</u>, Assistant Attorney General; <u>David M. Cohen</u>,
Director, and <u>Velta A. Melnbrencis</u>, Assistant Director, Commercial
Litigation Branch, Civil Division, U.S. Department of Justice; and
Office of Chief Counsel for Import Administration, U.S. Department
of Commerce (<u>John F. Koeppen</u>), of counsel, for the defendant.

     <u>Collier Shannon Scott, PLLC</u> (<u>Michael J. Coursey</u> and <u>Adam H.
Gordon</u>) for the intervenor-defendant.


          AQUILINO, Judge: Before the court is plaintiffs' USCIT

Rule 56.2 motion for judgment on the administrative record wherein

they seek vacation of the determination[1] by the International Trade
Administration, U.S. Department of Commerce ("ITA") that their
product is within the scope of the <u>Notice of Amendment of Final
Determination of Sales at Less Than Fair Value and Antidumping Duty
Order: Certain Preserved Mushrooms From the People's Republic of
China</u>, 64 Fed.Reg. 8,308 (Feb. 19, 1999).

I

This antidumping-duty order was precipitated by
petition(s) filed by domestic U.S. mushroom producers requesting
investigation of certain preserved mushrooms imported from Chile,
China, India and Indonesia.  The petitioners sought to exclude from
the investigation "'marinated', 'acidified' or 'pickled' mushrooms,
which are packed with solutions such as oil, vinegar or acetic acid
(HTS heading 2001.90.39)."  Plaintiffs' Appendix, tab 1, p. 13.  In
a letter supplementing the petition(s), they stated that marinated,
acidified and pickled mushrooms are all "prepared or preserved by
means of vinegar or acetic acid" and are therefore "covered under
HTS heading 2001.90.39".  Plaintiffs' Appendix, tab 2, p. 4.  The
petition also contained a footnote stating that its "scope . . .
comports with the Food and Drug Administration's ('FDA') standards

---

[1] This determination has not been published in the Federal
Register but is presented in Appendix to Plaintiff's Brief in Sup-
port of Their Rule 56.2 Motion [hereinafter referred to as
"Plaintiffs' Appendix"], tab 13.

Background of this case is set forth in <u>Tak Fat Trading Co. v.
United States</u>, 24 CIT 1376 (2000), and <u>Tak Fat Trading Co. v.
United States</u>, 26 CIT ___, 185 F.Supp.2d 1358 (2002).

of identity for canned mushrooms.   21 C.F.R. §155.201."   Plain-
tiffs' Appendix, tab 1, p. 12.

A

Despite those particular references to the Harmonized
Tariff Schedule of the United States ("HTSUS") and the FDA's
standards of identity, neither the ITA's preliminary nor its
amended final determination of sales at less than fair value
includes them.   Rather, the latter is stated to encompass

certain preserved mushrooms whether imported whole,
sliced, diced, or as stems and pieces. The preserved
mushrooms covered under this order are the species
Agaricus bisporus and Agaricus bitorquis. "Preserved
mushrooms" . . . have been prepared or preserved by
cleaning, blanching, and sometimes slicing or cutting.
These mushrooms are then packed and heated in containers
including but not limited to cans or glass jars in a
suitable liquid medium, including but not limited to
water, brine, butter or butter sauce. Preserved mushrooms
may be imported whole, sliced, diced, or as stems and
pieces. Included within the scope of the investigation
are "brined" mushrooms, which are presalted and packed in
a heavy salt solution to provisionally preserve them for
further processing.

Excluded from the scope of this investigation are
the following: (1) all other species of mushroom,
including straw mushrooms; (2) all fresh and chilled
mushrooms, including "refrigerated" or "quick blanched
mushrooms"; (3) dried mushrooms; (4) frozen mushrooms;
and (5) "marinated," "acidified" or "pickled" mushrooms,
which are prepared or preserved by means of vinegar or
acetic acid, but may contain oil or other additives.

The merchandise subject to this investigation is
classifiable under subheadings 2003.10.0027, 2003.10.00-
31, 2003.10.0037, 2003.10.0043, 2003.10.0047, 2003.10.00-
53, and 0711.90.4000 of . . . HTS[US]. Although the[se]
subheadings are provided for convenience and Customs
purposes, the Department's written description of the
merchandise under the order is dispositive.

64 Fed.Reg. at 8,309.

B

In its preliminary determination of material injury, the International Trade Commission ("ITC") concluded that, although there are some physical and manufacturing-process similarities between marinated, acidified or pickled mushrooms and the preserved mushrooms under investigation,

> on the whole there is little interchangeability, with consumers perceiving the two products differently. There are also differences in physical characteristics, particularly taste, between the two products. Consequently, for purposes of these preliminary determinations we find that marinated, acidified and pickled mushrooms are not within the like product subject to these investigations.

Certain Preserved Mushrooms From Chile, China, India, and Indonesia, ITC Pub. No. 3086, p. 10 (Feb. 1998). Its final determination in this matter adopted, for like-product[2], the reasoning of Certain Preserved Mushrooms From Chile, ITC Pub. No. 3144, p. 6 (Nov. 1998), which stated that,

> [a]lthough preserved mushrooms and marinated mushrooms share some common channels of distribution and production facilities, they have different tastes that limit marinated mushrooms' end uses, very limited interchangeability, are perceived to be different products by both producers and customers, and sell in different price ranges. We believe that the distinctions between preserved and marinated mushrooms establish a "clear dividing line." We consequently do not include marinated mushrooms in the domestic like product.

---

[2] Certain Preserved Mushrooms From China, India, and Indonesia, ITC Pub. No. 3159, p. 5 (Feb. 1999).

C

        The plaintiffs herein are a producer, an exporter, and

importers of

        marinated or acidified mushrooms of the species *agaricus*
        *bisporus* that are . . . washed, blanched in water . . .
        and then placed in . . . cans [that] are then filled with
        a marinade consisting of . . . water[,] salt [ ], sugar
        [ ], vinegar [ ], acetic acid [ ], yeast extract [ ],
        citric acid [ ], MSG [ ], vitamin C [ ], flavorings [ ],
        and spices [ ].  . . .  The finished equilibrium pH of
        the mushrooms is controlled at or below 4.6.[4]

Defendant's Appendix, Exhibit 1, p. 2 (footnotes 2 and 3 omitted;

brackets in original).  The footnote 4 to the foregoing product

description states:


        If an acidified food is found to have a pH above
        4.6, it must be subjected to further thermal processing
        as a low acid food for safety reasons.  21 C.F.R. §114.-
        89.  The manufacturer of the subject product both acidi-
        fies and thermally processes its mushrooms.


Id.  The plaintiffs requested the scope determination by the ITA,

pointing out that the petition(s) "excluded marinated and acidified

mushrooms not meeting the [FDA's] standard for canned mushrooms"[3],

which does not provide for vinegar or acetic acid.[4]  Whereupon

_____

        [3] Defendant's Appendix, Exhibit 1, p. 2.

        [4] See 21 C.F.R. §155.201(a)(3) (2000).  Canned mushrooms are
defined as

        food properly prepared from the caps and stems of
        succulent mushrooms conforming to the characteristics of
        the species *Agaricus (Psalliota) bisporus* or *A. bitor-*
        *quis*, . . . ; and may contain one or more safe and suit-
        able optional ingredients specified in paragraph (a)(3)
        of this section. The food is sealed in a container and,
        before or after sealing, is so processed by heat as to
        prevent spoilage.
                                        (footnote continued)

their position was and is, "[b]ecause the subject marinated mush-
rooms . . . do not meet that FDA standard, they are outside the
scope of the antidumping duty order."  Id.

     After a preliminary ruling and considering comments
thereon, the ITA issued its final determination that

> the "marinated or acidified" mushrooms produced, exported
> or imported by [the plaintiffs] are within the scope of
> the antidumping duty order on [certain preserved mush-
> rooms] from the PRC based on their acetic acid content
> level.

Plaintiffs' Appendix, tab 13, second page.  It is based on the pe-
titioners' use of HTSUS subheading 2001.90.39 to define the
products they intended to exclude from this matter and the agency's

---

21 C.F.R. §155.201(a)(1) (2000).  Those optional ingredients are:

(i)    Salt.
(ii)   Monosodium glutamate.
(iii)  Disodium inosinate complying with the provisions
       of Sec. 172.535 of this chapter.
(iv)   Disodium guanylate complying with the provisions
       of Sec. 172.530 of this chapter.
(v)    Hydrolyzed vegetable protein.
(vi)   Autolyzed yeast extract.
(vii)  Ascorbic acid (vitamin C) in a quantity not to
       exceed 132 milligrams for each 100 grams (37.5
       milligrams for each ounce) of drained weight of
       mushrooms.
(viii) Organic acids (except no vinegar is permitted),
       only where the inside metal of the container is
       fully enamel-lined and in glass containers with
       fully enamel-lined caps. Ascorbic acid as provid-
       ed for in paragraph (a)(3)(vii) of this section.
(ix)   Calcium disodium ethylenediaminetetraacetate
       ($CaNa_2$ EDTA) in a quantity not to exceed 200 parts
       per million for use to promote color retention.

Ibid.

"appropriat[ion of] the phrase 'prepared or preserved with vinegar or acetic acid' directly from the HTS heading". <u>Id</u>., seventh page. The ITA read that phrase as having been interpreted by Customs to require a minimum 0.5 percent acetic-acid level. <u>See</u> <u>id</u>., ninth page. As plaintiffs' product, admittedly, does not contain that much, the agency determined it to be within the ambit of its anti-dumping-duty order. <u>See</u> <u>id</u>., second and fifth pages.

## II

Jurisdiction over this case is pursuant to 28 U.S.C. §§ 1581(c) and 2631(c). The standard of review is whether the determination is unsupported by substantial evidence on the record or otherwise not in accordance with law. <u>See</u> 19 U.S.C. §§ 1516a(a)(2)(B)(vi), 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). It must also be noted that, on questions of scope, the ITA has "broad authority to interpret its own antidumping duty orders". <u>INA Walzlager Schaeffler KG v. United States</u>, 108 F.3d 301, 307 (Fed.Cir. 1997). Such determinations are made pursuant to 19 C.F.R. §351.225, which states that, in

> considering whether a particular product is included within the scope of an order . . . , the Secretary will take into account the following:
>
> (1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission.

> (2) When the above criteria are not dispositive, the Secretary will further consider:
>
> > (i)    The physical characteristics of the product;
> > (ii)   The expectations of the ultimate purchasers;
> > (iii)  The ultimate use of the product;
> > (iv)   The channels of trade in which the product is sold; and
> > (v)    The manner in which the product is advertised and displayed.

19 C.F.R. §351.225(k) (2000).

### A

None of the parties suggests resort to these enumerated criteria.[5]  Rather, each side argues for a different interpretation of the petition language and the agency determination(s).  See, e.g., Plaintiffs' Brief, pp. 12-13; Defendant's Memorandum, p. 31; Response Brief of Defendant-Intervenor, pp. 15-16.

The plaintiffs reiterate that the "petitioners intended the dumping order to cover only products meeting the 'standard of identity' for 'canned mushrooms'".[6]  They further argue that nei-

---

[5] Indeed, as noted by the ITA in its preliminary ruling, the FDA standard of identity

> is not controlling of the scope of the order . . . , which contains intentionally broad text so as to include all preserved mushrooms, with some very specific exceptions.

Plaintiffs' Appendix, tab 12, numbered pages 8-9.

[6] Plaintiffs' Brief, pp. 16-17.  However, as they explained in a letter supplementing the petition, the petitioners were

> concerned about circumvention by the placing of preserved mushrooms in containers other than cans, such as jars or tubs, and therefore . . . have defined the scope as "certain preserved mushrooms."

Plaintiffs' Appendix, tab 2, numbered page 5.

ther the plain language of the order nor the record support use of

the 0.5 percent acetic-acid-level test to determine whether their

product is within the scope of the order.

The defendant maintains that the order

> reflected the petitioners' intent to exclude from the
> scope only such mushrooms that are "prepared and pre-
> served by means of vinegar or acetic acid," even though
> it omitted the reference to HTS subheading 2001.90.39.

Defendant's Memorandum, pp. 30-31.  The intervenor-defendant also

contends that the exclusionary language should be interpreted in

conformity with the HTS subheading.  See Response Brief of Defend-

ant-Intervenor, pp. 15-16.

B

The merchandise specifically excluded from this matter

was described in the ITA's notices of initiation of investigation

and of the preliminary, final, and amended final determinations

with identical language, to wit:

> "marinated," "acidified" or "pickled" mushrooms, which
> are prepared or preserved by means of vinegar or acetic
> acid, but may contain oil or other additives.[7]

The ITC also excluded from its preliminary and final determinations

"marinated, acidified and pickled mushrooms", stating that they

---

[7] 63 Fed.Reg. at 5,361; at 41,795; at 72,256; 64 Fed.Reg. at
8,309.  The language in the petition differed somewhat from that of
the ITA, excluding

> "marinated", "acidified" or "pickled" mushrooms, which
> are packed with solutions such as oil, vinegar or acetic
> acid (HTS heading 2001.90.39).

Plaintiffs' Appendix, tab 1, numbered page 13.

"defined the domestic like product to encompass only the types of preserved mushrooms within Commerce's scope definition."  ITC Pub. No. 3086, pp. 5, 10; ITC Pub. No. 3159, p. 5.

On its face, this administrative exclusion is clear, and the court so finds.  After review of the agency record developed in connection herewith, the court also concludes that plaintiffs' product is just as clearly within the ambit of the exclusion.  The record does not support a description of that product other than as posited by the plaintiffs, supra, to wit, mushrooms marinated or acidified, packed in cans with water, salt, sugar, vinegar, acetic acid, yeast extract, citric acid, MSG, vitamin C, flavorings, and spices, the finished equilibrium pH of which is controlled at or below 4.6.

Indeed, the defendant does not argue otherwise.  Rather, it explains in the exercise of its broad discretion that the

> petitioners clearly referred to the HTS number in the petition, and cited to specific descriptive language of the HTS heading in the Petition Supplement when clarifying for the Department the scope of the excluded merchandise.  Although we omitted from the exclusion clause of the scope language the HTS headings provided by the petitioners, we appropriated the phrase "prepared or preserved with vinegar or acetic acid" directly from the HTS heading for products classified under HTS heading 2001.  . . .
>
> Regarding Tak Fat's arguments with respect to the FDA standards for acetic acid content, we reiterate that we have considered all of the evidence on the record, and we continue to find more compelling the evidence that the petitioners relied upon the language which was taken from the HTS subheading and which had an established meaning to describe the excluded merchandise.

Plaintiffs' Appendix, tab 13, numbered pages 6-7.

This being the case, it is necessary to consider that part of the HTSUS referred to by the agency, namely:

2001          Vegetables, fruit, nuts and other edible parts
              of plants, prepared or preserved by vinegar or
              acetic acid:

                   Other:

                        Other:
                             Vegetables:

2001.90.39                    Other[.]

The "established meaning" of this subheading to which they also refer and rely emanates from a 1983 ruling letter (069121) of the U.S. Customs Service which this court has examined.  It reflects thorough reasoning, but that analysis necessarily focused on interpretation of item 141.77 of the Tariff Schedules of the United States ("TSUS") (1980), the heading for which encompassed "Vegetables (whether or not reduced in size), packed in salt, in brine, pickled, or otherwise prepared or preserved".  And note 1(b) to that heading provided that

> the term "_pickled_" means prepared or preserved in vine-
> gar or acetic acid whether or not packed in oil or
> containing sugar, salt, or spices.

Underscoring in original.  Hence, the issue for consideration and resolution by Customs was refinement of that term, not the above phrase of the HTSUS "appropriated" by the ITA covering vegetables

"prepared or preserved by vinegar or acetic acid".  Resolution of

that issue led to the following holding by the Service:

> Based on trade, technical, and common understanding of
> the term "pickled," the obvious intent of Congress in its
> use thereof was to require more than a mere minimal
> amount of acetic acid in order to result in a "pickled"
> product for tariff purposes.  The requirement of Customs
> that such a product contain a minimum of 0.5 percent
> acetic acid (subject to allowable tolerances) in the
> equilibrated product comports with these bases of [w]ell-
> settled principles of Customs law interpreting the scope
> of various terms . . ..

HQ 069121, p. 10, para. 1.  See id., p. 4.

This quantitative holding may still be of some moment for

*pickled* products[8], but Congress has left that organoleptic term out

of the HTSUS relevant to this case with no indication that the 1983

approach to enforcement of the TSUS continue now.

Here, there is no claim or showing on the record that

plaintiffs' product is pickled in accordance with the Customs

concept of acidity, but this void cannot be dispositive since the

ITA's language of exclusion is in the disjunctive, *viz.*, marinated,

acidified, **or** pickled mushrooms.  On the other hand, the record

does support the fact that plaintiffs' product is both marinated

and acidified.

Finally, the HTSUS subheadings referred to by the agency

in its amended final determination of sales at less than fair

---

[8] Cf. HQ 957041 (Nov. 10, 1998); HQ 959313 (Feb. 20, 1997); HQ
956850 (March 22, 1996); HQ 952738 (Jan. 27, 1993); HQ 085838 (Dec.
21, 1989).

value, _supra_, 64 Fed.Reg. at 8,309, as genuinely encompassing the merchandise subject thereto are headed by the following descriptions:

    2003    Mushrooms and truffles, prepared or pre-
            served otherwise than by vinegar or acet-
            ic acid[.]

    0711    Vegetables provisionally preserved (for
            example, by sulfur dioxide gas, in brine,
            in sulfur water or in other preservative
            solutions), but unsuitable in that state
            for immediate consumption[.]

The record developed does not place plaintiffs' product under either heading. There is no showing, for example, that those mushrooms are prepared or preserved "otherwise" than by vinegar or acetic acid.

                                    III

        Given the lack of substantial evidence in support of the ITA's scope determination contested herein and the inapposite standard of law exclusively relied on by the agency in connection therewith, plaintiffs' motion for judgment upon the record must be granted.

Decided:  New York, New York
          October 17, 2003


                                    _____
                                              Judge