# United States Court of Appeals for the Federal Circuit

04-1131, -1174

TAK FAT TRADING COMPANY,
MEI WEI FOODS INDUSTRY CO., LTD., LEUNG MI INTERNATIONAL,
TAK YUEN CORPORATION, and GENEX INTERNATIONAL CORPORATION,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellant,

and

COALITION FOR FAIR PRESERVED MUSHROOM TRADE,

Defendant-Appellant.

Erik D. Smithweiss, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP, of New York, New York, argued for plaintiffs-appellees. Of counsel was Max F. Schutzman.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant United States. With her on the brief were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director. Of counsel on the brief were John D. McInerney, Chief Counsel, Berniece A. Browne, Senior Counsel, and Scott D. McBride, Attorney, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC. Of counsel were Jeanne E. Davidson, Deputy Director, and Richard P. Schroeder, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice.

R. Alan Luberda, Collier Shannon Scott, PLLC, of Washington, DC, argued for defendant-appellant Coalition For Fair Preserved Mushroom Trade. With him on the brief were Michael J. Coursey and Adam H. Gordon.

Appealed from: United States Court of International Trade

Judge Thomas J. Aquilino, Jr.

# United States Court of Appeals for the Federal Circuit

04-1131, -1174

TAK FAT TRADING COMPANY,
MEI WEI FOODS INDUSTRY CO., LTD., LEUNG MI INTERNATIONAL,
TAK YUEN CORPORATION, and GENEX INTERNATIONAL CORPORATION,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellant,

and

COALITION FOR FAIR PRESERVED MUSHROOM TRADE,

Defendant-Appellant.

_____

DECIDED:  February 9, 2005

_____

Before MAYER,* CLEVENGER and LINN, <u>Circuit Judges</u>.

CLEVENGER, <u>Circuit Judge</u>.

The United States and the Coalition for Fair Preserved Mushroom Trade ("Coalition") appeal the decision of the Court of International Trade reversing the scope ruling by the International Trade Administration, U.S. Department of Commerce ("Commerce") that held that mushrooms imported by plaintiffs (collectively "Tak Fat") were not excluded from within the scope of the <u>Notice of Amendment of Final</u>

_____
    *    Haldane Robert Mayer vacated the position of Chief Judge on December 24, 2004.

<u>Determination of Sales at Less than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms From the People's Republic of China, 64 Fed. Reg. 8,308 (Feb. 19, 1999)</u>. Because the Court of International Trade erred when it disturbed the determination by Commerce that Tak Fat's mushrooms are not excluded from the dumping order, the decision of the Court of International Trade is reversed and the scope determination by Commerce is reinstated.

I

The antidumping order at issue in this case began as a petition by U.S. mushroom producers who requested an investigation of imported preserved mushrooms from Chile, China, India, and Indonesia but proposed to exclude particular mushrooms that were "marinated," "acidified," or "pickled." In proposing such an exclusion, petitioners cited to the Harmonized Tariff Schedule ("HTS" or "HTSUS") subheading 2001.90.39. In a supplementary letter to Commerce they again stated that marinated, acidified and pickled mushrooms are those "prepared or preserved by means of vinegar or acetic acid," as under HTS subheading 2001.90.39. The petition also included a footnote that stated that the scope of the petition comported with the Food and Drug Administration's ("FDA's") standards of identity for canned mushrooms.

After investigation, Commerce issued an order that applied to "preserved mushrooms" from China which are "prepared or preserved by cleaning, blanching, and sometimes slicing or cutting" and "then packed and heated in containers including but not limited to water, brine, butter or butter sauce." 64 Fed. Reg. at 8,309. Commerce did not include references to either the HTS headings or the FDA standards when it excluded "'marinated,' 'acidified' or 'pickled' mushrooms, which are prepared or

preserved by means of vinegar or acetic acid, but may contain oil or other additives" from the order. Id.

On January 6, 1998, Tak Fat requested a scope ruling to determine whether their mushrooms were excluded from the antidumping order. Tak Fat argued that the FDA standards should be used to determine which mushrooms fall within the order, and that their mushrooms contained vinegar, an ingredient not found in canned mushrooms under the FDA standards. When tested by Commerce, Tak Fat's canned mushrooms were less than 0.1 percent acetic acid by weight and the canning solution had a pH that ranged from 4.5 to 4.7. A pH of less than 4.6 is considered an "acidified" food under the FDA definition. Stating that the pH was lowered in order to prevent the growth of botulism and "preserve" the mushrooms, Tak Fat contended that the presence of vinegar in its mushrooms removes them from the scope of "canned mushrooms" under FDA standards. Commerce rejected Tak Fat's contention and found in its preliminary ruling that the FDA standard of identity "is not controlling of the scope of the order." Instead of the FDA standard, Commerce relied on the language in the order that was "appropriated" from HTS subheading 2001.90.39 to determine the scope of the exclusion. Commerce looked to Customs rulings that classified products under this HTS heading by percentage weight of vinegar or acetic acid. These rulings referenced Headquarters Ruling Letter (HRL) 069121 from May 20, 1983, which defined products prepared or preserved in vinegar or acetic acid as having a minimum of 0.5 percent acetic acid content. Commerce applied the 0.5 percent acetic acid test to Tak Fat's products and found that because they did not meet the test for "prepared or preserved

04-1131, -1174                          3

by vinegar or acetic acid," Tak Fat's mushrooms were not excluded from the antidumping order.

Tak Fat then appealed the case to the Court of International Trade. Tak Fat Trading Co. v. United States, 294 F. Supp. 2d 1352 (Ct. Int'l Trade 2003). They argued before the court that the plain language of neither the order nor the record supported Commerce's reliance on the HTS reference and the consequent use of the 0.5 percent acetic acid standard in determining whether Tak Fat's mushrooms were excluded. Id. at 1357. The court agreed with Commerce that the HTS, not the FDA, standard was the correct reference for determining if Tak Fat's products were excluded from the scope of the order. Id. at 1358. The court, however, rejected Commerce's reliance on the test found in the Customs Headquarters ruling because the court differentiated "pickled" from "marinated" or "acidified" and found that the 0.5 percent acetic acid standard applies only to "pickled" products and not necessarily to "marinated" or "acidified" products. Id. at 1359. The court thus found the standard set forth in the Customs Headquarters ruling should not apply to Tak Fat's product because it was never contended that Tak Fat's mushrooms were "pickled." Id. Consequently, the court found that there was not substantial evidence in support of the scope determination by Commerce, and that Tak Fat's mushrooms therefore should not be subject to the antidumping duty. Id. Thus, the court granted Tak Fat's motion for summary judgment and vacated the determination by Commerce that Tak Fat's packaged mushrooms were within the scope of the antidumping order. Id. The court agreed with Commerce's basic contention that the HTS as construed through Customs rulings, not the FDA, provides the correct test and it differed with Commerce only on whether Tak Fat's products are

not excluded under the definition determined in reference to particular rulings of Customs. See id. at 1358-59.

The United States and the Coalition appeal the decision of the Court of International Trade requesting reinstatement of the initial Commerce scope ruling. We exercise jurisdiction over this appeal from a final decision of the United States Court of International Trade pursuant to 28 U.S.C. § 1295(a)(5) (2000).

## II

A decision of the Court of International Trade reviewing a final antidumping determination by Commerce is reviewed "anew" by this court by reapplying the standard of review as applied by the trial court when it reviewed the final determination by Commerce. Mitsubishi Heavy Indus., Ltd. v. United States, 275 F.3d 1056, 1060 (Fed. Cir. 2001); Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556, 1559 n.10 (Fed. Cir. 1984). This court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is not necessary that there could only be one conclusion; even if two inconsistent conclusions could have been drawn, the determination could still be supported by substantial evidence. See Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984).

## A

After investigation, Commerce will issue an antidumping order if merchandise has been sold at less than fair value. After an order is published, scope rulings may be

necessary when producers, like Tak Fat, need clarification as to the status of their products under the order. Determinations of whether a product falls under an antidumping order are made pursuant to 19 C.F.R. § 351.225(k):

> considering whether a particular product is included within the scope of an order . . . , the Secretary will take into account the following:
> (1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission.
>
> (2) When the above criteria are not dispositive, the Secretary will further consider:
>
> (i)     The physical characteristics of the product;
> (ii)    The expectations of the ultimate purchasers;
> (iii)   The ultimate use of the product;
> (iv)   The channels of trade in which the product is sold; and
> (v)     The manner in which the product is advertised and displayed.

19 C.F.R. § 351.225(k) (2004).

If the determination can be made based on section (k)(1), a scope ruling will issue without a full evaluation of the criteria in (k)(2). Commerce has "broad authority to interpret its own antidumping duty orders." INA Walzlager Schaeffler KG v. United States, 108 F.3d 301, 307 (Fed. Cir. 1997).

The language of the order determines the scope of an antidumping duty order. Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002). Scope orders are interpreted under 19 C.F.R. § 351.225(k) with the aid of the antidumping petition, investigation and preliminary order. Id. But the petition and investigation "cannot substitute for the language in the order itself." Id. The Federal Circuit has said that "[i]t is the responsibility of the agency, not those who initiated the proceedings, to determine the scope of the final orders. Thus, a predicate for the interpretive process is language in the order that is subject to interpretation." Id. The scope of the order can

be clarified but it cannot be changed by the interpretive process. Id. In the case before us, the order exclusion contains language that must be interpreted.

B

In the initial petition that began the antidumping inquiry, the Coalition described the scope of imported merchandise the petition was intended to cover:

> The scope of this investigation covers certain preserved mushrooms whether imported whole, sliced, diced, or as stems and pieces. The preserved mushrooms covered under this investigation are the species *Agaricus bisporus* and *Agaricus bitorquis.* "Preserved mushrooms" refer to mushrooms that have been prepared or preserved by cleaning, blanching, and sometimes slicing or cutting. These mushrooms are then packed and heated in containers including but not limited to cans or glass jars, in a suitable liquid medium that may include but is not limited to water, brine, or butter (or butter sauce). Preserved mushrooms may be imported whole, sliced, diced, or as stems and pieces. Included within the scope of the investigation are "brined" mushrooms, which are presalted and packed in a heavy salt solution to provisionally preserve them for further processing.

> The merchandise subject to this investigation is classified at subheadings 2003.10.27, 2003.10.31, 2003.10.37, 2003.10.43, 2003.10.47, 2003.10.53, and 0711.90.4000 of the Harmonized Tariff Schedule of the United States ("HTS"). Although the HTS subheadings are provided for convenience and Customs purposes, the written description of the merchandise under investigation is dispositive.

> Excluded from the scope of this petition are the following: (1) all other species of mushroom including straw mushrooms (HTS heading 2003.10.009); (2) all fresh and chilled mushrooms (HTS heading 0709.51.00), including "refrigerated" or "quick blanched"; (3) dried mushrooms (HTS headings 0712.30.10 and 0712.30.20); (4) frozen mushrooms (HTS heading 0710.80.20); and (5) "marinated," "acidified" or "pickled" mushrooms, which are packed with solutions such as oil, vinegar or acetic acid (HTS heading 2001.90.39).

(Antidumping Duty Petition: Certain Preserved Mushrooms from Chile, China, India, and Indonesia (January 6, 1998), J.A. at 25-26) (emphasis added). Also included in the petition was a footnote that stated that "[t]he scope of this petition comports with the

04-1131, -1174                                    7

Food and Drug Administration's ('FDA') standards of identity for canned mushrooms."

Id.

Commerce did not adopt the exact language the petitioners suggested. Neither the HTS nor the FDA standards were listed in the preliminary or the final determination of sales of less than fair value by Commerce. The antidumping order was written as follows:

> The products covered . . . are certain preserved mushrooms whether imported whole, sliced, diced, or as stems and pieces. The preserved mushrooms covered under this order are the species Agaricus bisporus and Agaricus bitorquis. "Preserved mushrooms" . . . have been prepared or preserved by cleaning, blanching, and sometimes slicing or cutting. These mushrooms are then packed and heated in containers including but not limited to cans or glass jars in a suitable liquid medium, including but not limited to water, brine, butter or butter sauce. Preserved mushrooms may be imported whole, sliced, diced, or as stems and pieces. Included within the scope of the investigation are "brined" mushrooms, which are presalted and packed in a heavy salt solution to provisionally preserve them for further processing.

> Excluded from the scope of this investigation are the following: (1) all other species of mushroom, including straw mushrooms; (2) all fresh and chilled mushrooms, including "refrigerated" or "quick blanched mushrooms"; (3) dried mushrooms; (4) frozen mushrooms; and (5) <u>"marinated," "acidified" or "pickled" mushrooms, which are prepared or preserved by means of vinegar or acetic acid, but may contain oil or other additives.</u>

> The merchandise subject to this investigation is classifiable under subheadings 2003.10.0027, 2003.10.0031, 2003.10.0037, 2003.10.0043, 2003.10.0047, 2003.10.0053, and 0711.90.4000 of HTS. Although the subheadings are provided for convenience and Customs purposes, the Department's written description of the merchandise under the order is dispositive.

64 Fed. Reg. at 8,309.

The language chosen by Commerce for the order referred to mushrooms that are "prepared or preserved by means of vinegar or acetic acid, but may contain oil or other

additives," not mushrooms "which are packed with solutions such as oil, vinegar or acetic acid," which is the language the petitioners recommended. Part of the adopted language, "prepared or preserved by means of vinegar or acetic acid," appears in the HTS subheading 2001.90.39 describing the class of vegetables covered by that tariff schedule. The exact heading is:

2001    Vegetables, fruit, nuts and other edible parts of plants, prepared
        or preserved by vinegar or acetic acid:
                    Other: . . .
                Other:
                    Vegetables: . . .
2001.39.90                          Other . . . [.]

Because of this similarity, Commerce deemed that the language in the order should refer to the same standard as the HTS heading cited in the original petition. To interpret this heading, Commerce turned to Customs rulings. Commerce determined that decisions by Customs interpreting "prepared or preserved by means of vinegar or acetic acid," as used in HTS subheading 2001.90.39, apply a standard that the product must be a minimum 0.5 percent by weight acetic acid. Commerce thus used this quantitative standard to define which "marinated," "acidified," or "pickled" mushrooms are excluded from the antidumping order.

Customs Headquarters Ruling Letter (HRL) 069121 applied the 0.5 percent standard to "pickled" sweet pepper strips that were "prepared or preserve din [sic] vinegar or acetic acid." HRL 069121 (May 20, 1983). Since 1983, Customs has repeatedly applied the 0.5 percent by weight standard to determine which imported vegetable products are prepared or preserved by or in vinegar or acetic acid. In a ruling on imported jalapenos prepared by salt and acetic acid, Customs classified the product as "prepared or preserved by vinegar or acetic acid" under HTS subheading

2001.90.39. HQ 956850 (Mar. 22, 1996). In doing so, Customs looked to the quantitative content of acetic acid in the product. As support, the ruling stated:

> Customs position as to the minimum amount of acetic acid necessary to determine whether a vegetable is prepared or preserved by vinegar or acetic acid was outlined in Headquarters Ruling Letter (HRL) 069121. . . . That decision held that a product required a minimum of 0.5 percent acetic acid (subject to allowable tolerances) in the equilibrated product to be considered as prepared or preserved by vinegar or acetic acid. This position is unchanged.

Id.

Customs has applied the 0.5 percent standard to products in the category "Vegetables . . . prepared or preserved by vinegar or acetic acid," regardless of whether they were called "marinated," "acidified" or "pickled." See, e.g., HQ 957041 (Nov. 10, 1998) (jalapenos in solution); HQ 959361 (Apr. 17, 1997) (jalapenos prepared by salt and acetic acid); HQ 959313 (Feb. 20, 1997) (whole artichokes in vinegar); HQ 959314 (Feb. 20, 1997) (whole and quartered artichokes in vinegar); HQ 953518 (June 24, 1993) (jalapenos); HQ 952738 (Jan. 27, 1993) (pepperoncini and giardiniera). These Customs rulings span different types of products that have been prepared or preserved using vinegar or acetic acid—not only those labeled "pickled."

III

On appeal, the United States and the Coalition argue that the methodology used by Commerce to find Tak Fat's products not excluded from the order is supported by substantial evidence, the standard which we apply to the question of whether a particular scope ruling is sustainable. See Micron Tech., Inc. v. United States, 117 F.3d 1386, 1393 (Fed. Cir. 1997) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). To support their view, the appellants point to the language of the scope order, which contains no

04-1131, -1174                    10

reference to FDA standards, but instead recites language that is substantially the same as the language employed in the relevant HTS heading.  Further, the appellants argue that once the HTS standard is respected as correct, it follows naturally that the interpretations of the HTS heading are pertinent to understand the limits of exclusion under the antidumping order.  See Wheatland Tube Co. v. United States, 973 F. Supp. 149, 156-157 (Ct. Int'l Trade 1997), aff'd, 161 F.3d 1365, 1369 (Fed. Cir. 1998) (approving Commerce's reliance in a scope determination on Customs's interpretation of the phrase "of a kind used for," taken from a HTS heading, to refer to the chief, or principal, use of a product, and not of its actual use).

Tak Fat disagrees and urges us to apply the standard set forth by the FDA for canned mushrooms and "acidified" foods.  Tak Fat relies on the wording of the petition, which references both the FDA standard of identity for canned mushrooms and the HTS subheading, to argue that because the order does not refer to either the HTS subheading or the FDA standard, the HTS subheading should not be imported into the petition.  Tak Fat argues that the FDA standard unambiguously states that any vinegar content warrants a finding that the product is not "canned mushrooms" as covered by the antidumping order, but rather is an "acidified" product.  Tak Fat discounts the main argument favoring the HTS standard, arguing that the precise language of the HTS heading was not used in the initial petition, and therefore, reliance on the HTS is improper.  This argument fails for two reasons.  First, the issue is what the antidumping order covers, not what domestic industry proposed for coverage.  Second, when Commerce modified the petition's language to recite specific HTS language, that act is strong evidence that Commerce expressly addressed its focus on the HTS standard.

We think the appellants have the better of the arguments. Here, the scope order leads more naturally to the HTS standard than reliance on the FDA standard. Simply because the Coalition referenced the FDA standard when the proceeding was initiated is not determinative because HTS standards were also included in the petition. While the petition language describing the exclusion differs significantly from that of the HTS heading, the order adopts language that is virtually identical to that from the HTS heading and not the petitioners' language. To be precise, the petition requests exclusion for product "packed with solutions such as oil, vinegar or acetic acid (HTS heading 2001.90.30)." The order uses different language: "prepared or preserved by means of vinegar or acetic acid, but may contain oil or other additives." Except for the words "means of," this language tracks the HTS heading which covers vegetables "prepared or preserved by vinegar or acetic acid." The language of the order, not the petition, controls. <u>Duferco Steel</u>, 296 F.3d at 1097. We thus agree with the Court of International Trade that the HTS standard is the correct one to apply here, and we further agree that it is permissible to refer to Customs rulings on the HTS to find precision in the reach of the scope order.

We disagree with the Court of International Trade only over whether Tak Fat's products are not excluded from the scope of the antidumping order, when the Customs rulings are applied to the products in question. Here, we think it clear that Customs has not confined the 0.5 percent test solely to "pickled" goods. Rather, the 0.5 percent test has been relied on to cover goods that are "prepared or preserved by vinegar or acetic acid," as noted above. Indeed, the various rulings demonstrating that the 0.5 percent

test is not restricted to "pickled" products were presented to the Court of International Trade as support for Commerce's interpretation of the scope of the antidumping order.

## IV

Commerce tested Tak Fat's mushrooms and found that the product does not meet the threshold 0.5 percent acetic acid by weight test. Applying the proper test, Commerce correctly found that Tak Fat's mushrooms do not fall within the definition of the listed exclusions to the antidumping order. Although the Court of International Trade was essentially correct in its analysis of the underpinnings of Commerce's scope determination, it erred in its view that the pertinent Customs ruling only applies to "pickled" mushrooms. Because substantial evidence supports the use of the 0.5 percent test for Tak Fat's mushrooms, and because there is no dispute that such mushrooms fail the test for exclusion from the antidumping order, the Court of International Trade erred in reversing Commerce's determination that Tak Fat's products fell within the scope of the order. The decision of the Court of International Trade is accordingly reversed and the scope ruling issued by Commerce is reinstated.

## COSTS

No costs.

## <u>REVERSED</u>