NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CONSTANTINE N. POLITES,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

AND

**AD HOC COALITION FOR FAIR PIPE IMPORTS FROM CHINA** AND
**UNITED STEELWORKERS,**
*Defendants-Appellees.*

---

2011-1606

---

Appeal from the United States Court of International Trade in Case No. 09-CV-0387, Chief Judge Donald C. Pogue.

---

Decided: March 7, 2012

---

CONSTANTINE N. POLITES, Swarthmore, Pennsylvania, pro se.

MICHAEL D. PANZERA, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee United States. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and PATRICIA M. MCCARTHY, Assistant Director. Of counsel on the brief was JOANNA V. THEISS, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

ROGER B. SCHAGRIN, Schagrin Associates, of Washington, DC, for defendants-appellees AD HOC Coalition, et al. With him on the brief were GILBERT B. KAPLAN and BRAIN E. MCGILL, King & Spalding, LLP, of Washington, DC. Of counsel were JOHN W. BOHN and MICHAEL JAMES BROWN, Schagrin Associates, of Washington, DC.

---

Before RADER, *Chief Judge*, SCHALL and BRYSON, *Circuit Judges*.

PER CURIAM.

This case concerns a determination by the Department of Commerce that certain imported steel pipe is covered by antidumping and countervailing duty orders applicable to pipe imported from China. Plaintiff Constantine M. Polites filed a complaint in the Court of International Trade contending that his steel pipe imports are exempt from the antidumping and countervailing duties because they fall within an exclusion to the duty orders for finished scaffolding. The court upheld Commerce's interpretation of the antidumping and countervailing duty orders as covering Mr. Polites's imports. We affirm.

I

In 2008, Commerce issued an antidumping duty order and a countervailing duty order on circular welded carbon quality steel pipe imported from the People's Republic of China.  *See* Circular Welded Carbon Quality Steel Pipe from the People's Republic of China, 73 Fed. Reg. 42,547 (July 22, 2008) (notice of antidumping duty order); Circular Welded Carbon Quality Steel Pipe from the People's Republic of China, 73 Fed. Reg. 42,545 (July 22, 2008) (notice of countervailing duty order).  The orders covered certain welded carbon pipes and tubes of specified diameters, "regardless of wall thickness, surface finish . . . , end finish . . . , or industry specification . . . , generally known as standard pipe and structural pipe."  The orders excluded several types of pipe products, among them "finished scaffolding."  The scope of that exclusion is the disputed issue in this case.

Mr. Polites imports galvanized high-strength finished steel tubing from China and uses it in the construction of tube and coupler scaffolding.  In April 2008, his Chinese supplier informed him that the United States was considering imposing antidumping duties on circular welded steel pipe.  Mr. Polites requested a scope ruling from Commerce regarding the importation of such pipe, asserting that the products he imports "are in fact finished scaffolding products" and should be excluded from the steel pipe antidumping and countervailing duty orders.  Commerce disagreed.  In a memorandum dated August 12, 2009, Commerce concluded that Mr. Polites's scaffolding tubes did not qualify for the exclusion and fell within the scope of the orders.

Mr. Polites challenged that scope ruling by filing an action in the Court of International Trade.  After the

action was filed, Commerce requested a voluntary remand to allow it to articulate a definition of the "finished scaffolding" exclusion. The court granted the request and remanded the matter. Commerce then defined "finished scaffolding" as "completed supported elevated platforms" and "component parts that enter the United States unassembled as a 'kit.'" Based on that definition, Commerce once again concluded that Mr. Polites's imports did not meet the definition of "finished scaffolding" and that they remained subject to the antidumping and countervailing duty orders.

Mr. Polites continued to press his case before the Court of International Trade. He asserted that Commerce's definition of "finished scaffolding" as fully assembled elevated platforms was unreasonable because it would be impractical to import merchandise fitting that description. The court agreed, finding that "nothing in the record demonstrates merchandise matching this definition is imported into the United States or is even possibly imported into the United States." *Polites v. United States*, 755 F. Supp. 2d 1352, 1357 (Ct. Int'l Trade 2011). The court therefore held that part of the definition to be surplusage. *Id.* With respect to the "kit" part of the definition, the court found that there was no "showing that scaffolding kits are or may be imported into the United States as complete kits." *Id.* at 1358. The court therefore remanded the case to Commerce to determine whether scaffolding kits were being, or were capable of being, imported into the United States. *Id.* at 1359.

On remand, Commerce pointed to evidence that Chinese-origin scaffolding kits were being imported, or at least were capable of being imported, into the United States. That evidence consisted of (1) excerpts from the websites of several Chinese companies that sold scaffold-

ing kits and listed the United States as an export market; (2) a product listing and a shipping manifest from "Eternal Star," a Chinese company, reflecting the importation of scaffolding kits into the United States; (3) a Customs and Border Protection tariff classification ruling that referred to a particular importer's intention to import "scaffolding rollers both alone and in combination with the complete unassembled steel scaffolding"; and (4) evidence that scaffolding kits are classified under the Harmonized Tariff Schedule of the United States ("HTSUS") category 7308.40.00.00 and that a significant number of Chinese products had been imported into the United States under that tariff classification. Based on that evidence, Commerce ruled that the steel tubes imported by Mr. Polites fell within the scope of the anti-dumping and countervailing duty orders and did not satisfy the exclusion for finished scaffolding.

Mr. Polites challenged Commerce's decision in the Court of International Trade. The court, however, affirmed. *Polites v. United States*, 780 F. Supp. 2d 1351 (Ct. Int'l Trade 2011). Relying on the "Eternal Star" and tariff ruling evidence, the court concluded that "[t]ogether, these two pieces of evidence support the conclusion that scaffolding kits have been imported in the past and that some importers at least intend to import scaffolding kits into the United States."[1]  *Id.* at 1356. Therefore, the

---

[1]  The court did not rely on the website excerpts or the HTSUS classification in coming to its conclusion. The court could not determine whether the advertising in the excerpts, claiming the United States as a primary export market, constituted "mere puffery and not actual fact." *Polites*, 780 F. Supp. 2d at 1356 n.11. The HTSUS classification was likewise problematic, because the category under which scaffolding kits are classified was not limited strictly to scaffolding kits. The court was therefore un-

court ruled that the record evidence supported Commerce's definition of "finished scaffolding" to include scaffolding kits and that Mr. Polites's imported tubes did not fall within the scope of the "finished scaffolding" exclusion. *Id.* at 1356-57.

## II

On appeal, Mr. Polites makes a number of arguments, some of which are not properly within the scope of this appeal. He contends that the Court of International Trade failed to take into account that there was no domestic manufacturer of the specified material and no record of economic harm or potential economic harm to any domestic industry from materials such as his imports. Those arguments, however, go to the question whether an antidumping duty order or a countervailing duty order should have been issued in the first instance; they are not properly raised in a "scope determination" proceeding, which is limited to defining the proper scope of an issued order.

With respect to the issues properly before the court, Mr. Polites contends that the examples of kits that Commerce presented as evidence that "finished scaffolding" was being imported into the United States included only fabricated elements and did not include plain lengths of tubing. Because such kits lacked plain tubing, he argues, they would not be subject to the antidumping or countervailing duty orders in any event and thus, according to Mr. Polites, such kits were not suitable examples of goods that would be classified under the language of the exclusion.

---

able to find that products imported into the United States under that classification were scaffolding kits, rather than any of the other items within the category. *Id.*

In challenging Commerce's scope ruling, Mr. Polites must show that the ruling is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B); *Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005). We agree with the Court of International Trade that substantial evidence supports Commerce's determination that the tubes Mr. Polites seeks to import fall within the scope of the antidumping and countervailing duty orders. There is no dispute that the tubes meet the specifications set out in the orders. The only issue is whether they are exempt from the orders under the "finished scaffolding" exclusion.

"The language of the order determines the scope of an antidumping duty order." *Tak Fat Trading*, 396 F.3d at 1382; *see Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002). Commerce enjoys substantial freedom to interpret and clarify its antidumping duty orders, although it "cannot 'interpret' an antidumping order so as to change the scope of that order, nor can [it] interpret an order in a manner contrary to its terms." *Duferco Steel*, 296 F.3d at 1095, quoting *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001). We cannot conclude that Commerce's interpretation of the term "finished scaffolding" to include scaffolding kits is unsupported by substantial evidence. Although the evidence on which the trial court relied is thin, consisting of a shipping manifest and a ruling announcing the intent of one importer, Mr. Polites has not challenged that evidence in any way or offered any probative countervailing evidence of his own.[2]

---

[2] In the Court of International Trade, Mr. Polites claimed that he met with a manager of a company that is an importer/exporter and domestic supplier of scaffolding

As to Mr. Polites's objection that the examples of "finished scaffolding" being imported into the United States included only fabricated elements, and not any plain lengths of tubing, the description of the kit imported by Eternal Star for which Commerce provided the shipping manifest refers to steel tubes. The Court of International Trade concluded that "there is nothing on the record to suggest that the ship manifests are inaccurate or misleading," *Polites*, 780 F. Supp. 2d at 1355, and Mr. Polites has presented nothing of substance to undermine that conclusion.

The short of the matter is that Commerce determined that scaffolding kits are imported into the United States and that the steel tubes Mr. Polites seeks to import fail to qualify as such kits. Because that determination is supported by substantial evidence, we uphold the decision of the Court of International Trade sustaining Commerce's ruling.

**AFFIRMED**

---

and that the manager had never heard of scaffolding kits. That evidence, without more, does not undermine Commerce's determination that scaffolding kits are being imported, or at least are capable of being imported, by other companies.