**Slip Op. 14-9**

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MEDLINE INDUSTRIES, INC., : | |
| : | |
| Plaintiff, : | Before: Nicholas Tsoucalas, |
| : | Senior Judge |
| v. : | |
| : | Court No.: 13-00070 |
| UNITED STATES, : | |
| : | |
| Defendant. : | |
| : | |

## OPINION

[Plaintiff's motion for judgment on the agency record is denied.]

Dated: January 29, 2014

Michael G. Hodes and Lawrence R. Pilon, Hodes Keating & Pilon, of Chicago, IL, for plaintiff.

Douglas G. Edelschick, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Scott D. McBride, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

**Tsoucalas, Senior Judge**: Plaintiff Medline Industries, Inc. ("Medline") moves for judgment on the agency record contesting defendant Department of Commerce's ("Commerce") Scope Ruling on Medline's Hospital Bed End Panel Components (Dec. 21, 2012) ("Scope Ruling"). Medline insists that Commerce erroneously determined that its wooden hospital bed end panel components were within the scope of the antidumping duty order on wooden bedroom furniture from the People's Republic of China ("PRC"). Mem. Supp. Pl.'s Mot. J. Agency R. at 7 ("Pl.'s Br."). Commerce opposes Medline's

motion.  For the following reasons, Medline's motion is denied.

**BACKGROUND**

In January 2005, Commerce issued an antidumping duty order covering wooden bedroom furniture from the PRC.  See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order, 70 Fed. Reg. 329 (Jan. 4, 2005) (the "Order").  Commerce has since modified the scope of the Order, defining it during Medline's scope inquiry as follows:

> The product covered by the order is wooden bedroom furniture.  Wooden bedroom furniture is generally, but not exclusively, designed, manufactured, and offered for sale in coordinated groups, or bedrooms, in which all of the individual pieces are of approximately the same style and approximately the same material and/or finish.  The subject merchandise is made substantially of wood products, including both solid wood and also engineered wood products made from wood particles, fibers, or other wooden materials such as plywood, strand board, particle board, and fiberboard, with or without wood veneers, wood overlays, or laminates, with or without non-wood components or trim such as metal, marble, leather, glass, plastic, or other resins, and whether or not assembled, completed, or finished.
>
> The subject merchandise includes the following items: (1) Wooden beds such as loft beds, bunk beds, and other beds; (2) wooden headboards for beds (whether stand-alone or attached to side rails), wooden footboards for beds, wooden side rails for beds, and wooden canopies for beds; (3) night tables, night stands, dressers, commodes, bureaus, mule chests, gentlemen's chests, bachelor's chests, lingerie chests, wardrobes, vanities, chessers, chifforobes, and wardrobe-type cabinets; (4) dressers with framed glass

mirrors that are attached to, incorporated in, sit on, or hang over the dresser; (5) chests-on-chests, highboys, lowboys, chests of drawers, chests, door chests, chiffoniers, hutches, and armoires; (6) desks, computer stands, filing cabinets, book cases, or writing tables that are attached to or incorporated in the subject merchandise; and (7) other bedroom furniture consistent with the above list.

The scope of the order excludes the following items: (1) seats, chairs, benches, couches, sofas, sofa beds, stools, and other seating furniture; (2) mattresses, mattress supports (including box springs), infant cribs, water beds, and futon frames; (3) office furniture, such as desks, stand-up desks, computer cabinets, filing cabinets, credenzas, and bookcases; (4) dining room or kitchen furniture such as dining tables, chairs, servers, sideboards, buffets, corner cabinets, china cabinets, and china hutches; (5) other non-bedroom furniture, such as television cabinets, cocktail tables, end tables, occasional tables, wall systems, book cases, and entertainment systems; (6) bedroom furniture made primarily of wicker, cane, osier, bamboo or rattan; (7) side rails for beds made of metal if sold separately from the headboard and footboard; (8) bedroom furniture in which bentwood parts predominate; (9) jewelry armories; (10) cheval mirrors; (11) certain metal parts; (12) mirrors that do not attach to, incorporate in, sit on, or hang over a dresser if they are not designed and marketed to be sold in conjunction with a dresser as part of a dresser-mirror set; (13) upholstered beds and (14) toy boxes.

Scope Ruling at 2–3 (internal footnotes omitted).

Medline imports hospital bed end panel components from the PRC. See Scope Ruling Request at 1 (Nov. 12, 2012). In November 2012, it filed a scope ruling request concerning wooden

headboards and footboards made for its "Alterra™ Model FCE1232 steel-framed hospital beds." Id. at 1–2. In its request, Medline argued that the end panels were outside the scope of the Order because hospital beds are classified differently than bedroom furniture and were not discussed in the petition or the investigation underlying the Order. Id. at 5–7.

In the Scope Ruling, Commerce determined that Medline's wooden end panel components were within the scope of the Order because "the language of the scope explicitly includes wooden headboards and footboards." Scope Ruling at 8. Although it found the language of the Order to be dispositive, Commerce noted that its decision was consistent with previous scope rulings in which it determined that wooden end panels for metal-framed beds were within the scope of the Order. Id. at 6–8 (discussing Final Scope Ruling: Sunrise Medical Inc. (Sept. 29, 2005) ("Sunrise Ruling") and Scope Ruling on University Loft Company's Request (Dec. 13, 2011)). Commerce also rejected Medline's argument that its end panel components were not bedroom furniture, noting that it previously found that wooden end panels for beds made for use in long term care facilities were within the scope of the Order because "the scope covers all wooden bedroom furniture meeting the written description of the merchandise, and this written description is dispositive, regardless of tariff classifications." Id. at 7 (citing Sunrise Ruling at 11).

Medline contests the <u>Scope Ruling</u>, arguing that Commerce impermissibly expanded the scope of the <u>Order</u> to include non-bedroom furniture and failed to perform an adequate analysis in accordance with the regulations governing scope inquiries. <u>See</u> Pl.'s Br. at 8–23.

### JURISDICTION and STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006) and section 516A(a)(2)(B)(vi) of the Tariff Act of 1930,[1] as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2006).

The Court must uphold Commerce's scope determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). When reviewing a scope ruling, the Court grants "significant deference to Commerce's interpretation of its own orders." <u>Allegheny Bradford Corp. v. United States</u>, 28 CIT 830, 842, 342 F. Supp. 2d 1172, 1183 (2004). "However, Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." <u>Duferco Steel, Inc. v. United States</u>, 296 F.3d 1087, 1095 (Fed. Cir. 2002) (citing <u>Eckstrom Indus., Inc. v. United States</u>, 254 F.3d 1068, 1072 (Fed. Cir. 2001)).

---

[1] All further references to the Tariff Act of 1930 will be to the relevant provisions of Title 19 of the United States Code, 2006 edition, and all applicable supplements thereto.

## DISCUSSION

"In a scope ruling proceeding 'a predicate for the interpretive process is language in the order that is subject to interpretation.'" Arcelormittal Stainless Belg. N.V. v. United States, 694 F.3d 82, 84 (Fed. Cir. 2012) (quoting Tak Fat Trading Co. v. United States, 396 F.3d 1378, 1383 (Fed. Cir. 2005)). "If Commerce determines that the language at issue is not ambiguous, it states what it understands to be the plain meaning of the language, and the proceedings terminate." Id.; see Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1302 (Fed. Cir. 2013).

However, "[i]f the language is ambiguous, Commerce must next consider the regulatory history, as contained in the so-called '(k)(1) materials.'" Id. The "(k)(1) materials" include the "descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of [Commerce] (including prior scope determinations) and the [International Trade Commission]." 19 C.F.R. § 351.225(k)(1) (2013). While "[r]eview of the petition and the investigation may provide valuable guidance as to the interpretation of the final order[,]" these materials "cannot substitute for language in the order itself." Duferco Steel, 296 F.3d at 1097.

"If the (k)(1) materials are not dispositive, Commerce then considers the (k)(2) criteria." Mid Continent Nail, 725 F.3d at 1302. The (k)(2) criteria include: the "physical

characteristics of the product," the "expectations of the ultimate purchasers," the "ultimate use of the product," the "channels of trade in which the product is sold," and the "manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2).

As noted above, Commerce found that the language of the Order was unambiguous — "the language of the scope explicitly includes wooden headboards and footboards." Scope Ruling at 8. As Medline's end panel components are wooden headboards and footboards, Commerce concluded that they were within the scope of the Order. Id.

Medline acknowledges that its end panel components are wooden furniture as described in the scope language, but disputes Commerce's interpretation of the scope language with regard to the term "bedroom." See Pl.'s Br. at 8. According to Medline, the scope language is unambiguous: the Order covers "wooden bedroom furniture," and therefore the merchandise must be used in a bedroom. Id. at 10–11. Insisting that its hospital bed end panel components are not made for use in a bedroom, Medline argues that Commerce unreasonably expanded the scope of the Order. Id. at 11. Medline contends that Commerce ignored the term "bedroom" in its analysis, and therefore failed to consider the use of the end panel components. Id. at 11–12. Furthermore, Medline argues that even if the term "bedroom" was ambiguous, Commerce's analysis of the (k)(1) materials focused too narrowly on prior scope determinations

and ignored evidence contrary to its conclusion. Id. at 13-23.

Medline's alternative interpretation of the scope language is unpersuasive. Although Medline repeatedly refers to instances in which the Order mentions "bedroom" furniture, Medline does not identify any language in the Order limiting or defining the term "bedroom" in such a way as to unambiguously exclude the merchandise under review. See Pl.'s Br. at 10-13. In fact, the order does not further define the term "bedroom." See Scope Ruling at 2-4. Rather, it explicitly identifies the types of wooden furniture that are subject to the order, and those types that are excluded. Id. at 2-3. Accordingly, Medline cannot show that its end panel components are per se outside the scope of the Order simply in virtue of their use in hospital rooms.

Furthermore, contrary to Medline's insistence, the Scope Ruling is consistent with the plain terms of the Order. The scope language begins: "The product covered by the [Order] is wooden bedroom furniture." Scope Ruling at 2. As mentioned, the scope language does not further define "bedroom," but it does include a list of "subject merchandise" covered by the Order as well as a list of products excluded from the scope. Id. at 2-3. It specifically states that "[t]he subject merchandise includes . . . (2) wooden headboards for beds[,] . . . wooden footboards for beds, wooden side rails for beds, and wooden canopies for beds." Id. at 2. The list of subject and non-subject merchandise indicates that

Medline's wooden end panels — headboards and footboards — are of a type of merchandise the Order covers. Moreover, the language contradicts Medline's argument that Commerce was required to consider the use of the merchandise in its scope inquiry. Because the Order specifically identifies wooden headboards and footboards as subject merchandise, Commerce's interpretation of the scope language was reasonable. See Arcelormittal, 694 F.3d at 84.

Given that Commerce reasonably concluded that the scope language was unambiguous, the court need not address Medline's claim that Commerce's (k)(1) analysis was unreasonable. See id.; Mid Continent Nail, 725 F.3d at 1302.

## CONCLUSION

For the foregoing reasons, the Scope Ruling is supported by substantial evidence and otherwise in accordance with law. Judgment will be entered accordingly.

/s/ Nicholas Tsoucalas
**Nicholas Tsoucalas**
**Senior Judge**

**Dated:** **January 29, 2014**
**New York, New York**